and we move to the sixth case this morning. It's Alkady v. Corinna Luna May it please the court. My name is Eric Heise. I'm representing the plaintiff appellants in this field today. The district court's decision dismissing all the plaintiff's complaint. Counselor, speak up a little bit. The district court's decision dismissing all of the plaintiff appellant's complaint as moot should be reversed and the case should be remanded. The case, the finding that an agency decision somehow would moot a claim under a court ability to review a case under 7062 of the APA doesn't really make any sense. That's a final agency action that would be among other things arbitrary, capricious, in excess of statutory right or constitutional right. That type of review assumes that the agency's action is final and the decision is made. Counselor, I'm confused here because the agency did make a decision, right? It denied the applications after not receiving the additional information it requested. Yes, potentially. This goes to the issue of maybe something's wrong with the administrative record. That issue, that decision was issued in June of 2003 by the Department of Justice, INS, which didn't exist as of March 2003 and it's stamped. That at this stage, because we're talking about a motion to dismiss, right, that allows, that suggests some sort of procedural irregularity here. Plaintiff maintains he never received the RFP and he never received the decision. So when you start looking at this, you're saying you have a decision that's stamped after an agency no longer exists, right? So how can the Department of Justice issue a decision in June for the INS when it doesn't exist anymore? It's transferred to USCIS, but that's what the administrative record has. So you have that, you have the fact that he didn't actually receive, he claims he didn't receive it, he never received it. So he doesn't receive it, it's stamped after a time after which that agency no longer exists, right? And then when you look at the RFP, it basically says give us documentation to show that, you know, your sons are your sons and that you have a bona fide marriage. USCIS, or INS at that time, had already found the marriage to be bona fide and issued the I-130 for his wife, so that's great evidence he has right there, the agency's already concluded to have a bona fide marriage. He would have been a fool not to respond to that. He never received it. But I'm still confused because as I understand it, I had a little bit of trouble following your argument, but as I understand it, you're requesting that the agency adjudicate the petitions and they did. So there's no relief left as the district court said to give. Now, I guess I don't understand why you didn't amend your complaint to make different arguments. I mean, it sounds like you're challenging the validity of the decision or wanting to appeal from it. There was an account to, if the challenge is arbitrary depreciation in excess of statutory right and not following proper procedure of law, which all of this goes to. So while there is, you know, the mandamus complaint and then there is the complaint under 706-1, there is also still the review of a denial based on whether or not proper procedure was followed and whether or not, you know, there or there's enough evidence to support that decision by the agency. That is in there. Now, admittedly, it's a little muddled, but if you read through it, you see that the allegations are there and that the cause of action is there. And if we're talking about jurisdiction, which is what the court found, that establishes jurisdiction. And there's enough, basically, between the administrative record and what was pled in the complaint, I think, to survive even, you know, a 12b-6 motion. So I think that the claim is there. They say, what we're saying is that he never received the decisions and then years later discovers it through this litigation and it comes from an agency that doesn't even exist at that time. How does the Department of Justice issue decision in June 2003 when it stopped existing, when INS stopped existing in March 2003? It just doesn't make any sense. How can that happen? I mean, it just isn't clear. There's no explanation in it. And this is what we're also talking about why remand would be required here, is there could be an explanation. We might need extra record evidence to help build the case here of what actually happened back then. But as far as we know, our client never received the RFE, never received a decision, and then through the course of this litigation, this is produced with a stamp on it that says it came out in June 26, I believe 2003, from the INS, which no longer existed at the time that that date of the decision was issued. Why did the client wait so long to pursue this? I mean, if this happened in 2003, and if he thought he didn't receive a decision from INS, USCIS, why didn't he pursue this? Yeah, I think, you know, at this time, this was right around the time there was a bunch of new programs coming into place. He's from Yemen, Yemen people coming into entering, put into a whole system of review on their entry and exit. I think there may have been a little bit of fear about bringing a claim coming forward, and was under the impression that he basically walked away, basically that it was going to be denied. I'm not entirely sure why he didn't go see an attorney earlier, but when my firm took the case over, that's when we started working on the case. So I'm not entirely sure why he wouldn't have gone earlier, other than I do know that there was a bit of fear in the community at that time about a lot of programs going on. So, but with all of that said here, it still doesn't make any sense that an agency that doesn't exist could issue this decision, right? He never got the RFE. The RFE was a really simple RFE. His wife's case had already been approved. That's half the RFE right there, and then you basically need some additional documentation to prove the validity of the parent-child relationship, which could have been done. So, I mean, it's not, it's not a case where, like, you know, sometimes you'll see some of these documentation that's being required, requested, and it might be hard to actually get that stuff. It seemed like a pretty easy case. If he actually received it, he would have been a fool not to respond to that RFE. So that's why... Where are the kids now? I shouldn't call them kids. The kids are, the three children are still abroad. Half of his family is here with his wife, and the remaining children are still abroad, I believe, and I'm not entirely sure where they are. Yemen's obviously, there's a civil war going on in Yemen, and many people that are lucky enough to maybe flee to... They were living in Saudi Arabia for a while at the time of this filing. A lot of people from Yemen are fleeing to Djibouti. That's where we're, that's where we're currently processing, you know, immigrant visas from Yemeni nationals. They go to Djibouti embassy. So they're still overseas. You say half are here. He had, I believe he had, I believe he had six children. Three are part of this complaint. The others were approved along with his wife. It's just these three remaining at the time that were... They're still over there. Yes, they're still, they're still outside of the country, yes. You're not pursuing Mandamus anymore? I don't think Mandamus is really... I don't really... I think with, in light of the fact that even if, let's say, there was no decision, if we're still seeking to compel agency action, I think that APA 7061 would probably be, you know, strong enough, and it's an alternative form of relief. So I don't think Mandamus really, you know, we don't, we can live without Mandamus at this point. We're really seeking review of, you know, whether or not this is actually a valid decision, right? And then if it was a valid decision, is it actually a decision that comported with, you know, the requirements of the APA and the requirements in the INA and the Code of Federal Regulations? So we really... and it's an open dispute. I have no explanation how an agency that doesn't exist issues a decision, right? Maybe that's something that can be explained through extra record evidence and supplementing the administrative record. And I think that all of this shows that the district court had jurisdiction over this case. This isn't moved. This is a live claiming controversy, right? And I don't think that's why it was improper. It should be remanded. I think it's a pretty simple case right now because it was so... Well, as of August 12th, USCIS website continued to show the petitions as pending. Yeah, no, that's the other thing too. He relied on this forever, and this happens all the time, right? The website was still showing that the case was pending. He relied on that for a while. When he first came to our office, we were... we said, okay, it's pending. That's why this suit was originally filed, basically seeking mandamus or review under 706-1 to compel unlawfully withheld agency action. And then through the course of litigation was when these decisions were produced. We had tried to request before. I don't know if he had tried to request. He did this pro se. So we had tried to request a review. And through the proper channel, we tried to request basically would be like an info pass, which they no longer do. And that's what the thing about this website is. Now when you want to do an info pass, find out what's going on with the application, they say, go look at our website. That's what it is now. There are three children or whatever. I mean, they're adults now. They're adults. They have their own children, but they are still abroad, Saudi Arabia. Well, the fact that they're still over there, as Judge Barrett said, why did everybody wait so long? Why is that? Why the delay when they're still over there? It's not a matter of didn't get the RFE or something. You'd think they'd maybe initiate something else, at least to see what happened. As I said, I don't want to go too far with this, but there was a lot of programs in place at the time. This was at the beginning of 2003. This is when Department of Homeland Security was first created. And they're from Yemen. They were subject to a lot of controls, both leaving the country and coming into the country. Those programs were litigated to the Supreme Court. And it's reasonable for a person that's unsophisticated and not really knowledgeable the law and to be afraid to come forward about stuff like this when they've already availed themselves of the proper procedure, had gotten halfway with it. So, and, you know, I don't think that necessarily eventually going to get an attorney and having an attorney look into the case for you, when you see that you can look at it, you see that it's pending, right? I don't think that necessarily changes the posture of what we're looking at here in terms of the agency's and their rights, especially the plaintiff's rights, the U.S. citizen plaintiff's father's rights, you know, under the Constitution and the EPA. Let me just ask you one last question. So you told Judge Kani that you're no longer seeking the writ of mandamus. Mike, I'm still just, your complaint, I'm just still trying to make sense of it. The prayer for relief, though, I mean, you asked, you know, us to mandate that the agency adjudicate the petition. So I'm not sure what we're seeking. We're basically, we are seeking a review of the decision. And there is this factual dispute of we maintain that because that decision wasn't, it was issued by an agency that doesn't exist. How can that be a proper decision when the agency, the INS, didn't exist in June 2003 anymore? It should have been under USCIS, Department of Homeland Security. I mean, this idea of like, you have DHS over here, right? And then you have the DOJ over here, and the immigration courts are in the DOJ and the prosecutors in the DHS, even though everyone's under the executive, that division within the executive kind of satisfies due process for immigration, for removal proceedings, right? So how can DOJ be giving a decision for DHS when INS no longer exists? You know, it just doesn't make any sense. It just doesn't make sense. And I think that's a fundamental problem in this case that cannot be glossed over as saying, oh, you know, whatever, right? No, I mean, that's a real problem. The agency doesn't exist. What is more arbitrary in terms of government action than an agency that doesn't exist issuing a decision that has such binding and powerful determinations on a constitutional rights and rights under the statute for a U.S. citizen? And that's really, I think, where we are, what we're looking at here, and why we have to have at least review under the, whether or not it was arbitrary or capricious. Review under APA 7062 is still a very live dispute in this case. It was pled in the complaint. It's in cause, it's in act, it's in, it's in account to, right? And there's also about 90 paragraphs of different factual allegations that read in total. And in the review of the administrative record, which is attached to the motion to dismiss, shows that the factual issues exist and the court has jurisdiction over it. And the court's decision was really limited to the mootness in its own jurisdiction. That was incorrect. It should be remanded, and we should be able to proceed with litigation from there. Thank you, counsel. Thank you. Good morning, your honors. May it please the court, Nicole Grant, on behalf of the government. Does the agency exist? Does the INS exist, your honor? Whatever, he said it. Well, the INS is now USCIS. USCIS is the agency that processes I-130 petitions. I should note that this argument that plaintiffs are making is completely new. This was not argued before the district court, and it was not argued in the briefing filed before this court. So government would ask that the court not address that argument. It has not been briefed. The government has not had an opportunity to respond to that argument, and quite frankly, it's not before this court properly. The district court did not err in dismissing plaintiff's amended complaint. Plaintiffs lack standing. Plaintiffs' claims are moot, as plaintiffs seem to now concede, and also the court would not have erred if it had dismissed the complaint for failure to state a claim upon which relief could be granted. The issues that plaintiffs focused on in their briefing before the district court and before this court went to notice of the RFE and decisions, and to a, quote, alleged Yemeni adjudication scheme. The government's position is that plaintiffs lack standing in both of these arguments. First, plaintiffs lack standing in their notice or claimed lack of notice argument, simply because plaintiffs have pointed to no statute, no regulation, that the agency should have followed that would have provided better notice. The agency provided notice to the address that plaintiffs provided in their filed I-130s, and that was an address in Dearborn, Michigan, and that's the address that plaintiffs claim to have lived, and that's the address that the government sent notice of the request for additional evidence and notice of the ultimate decision on the I-130s. Plaintiffs have not argued that that address was incorrect, that they never lived at that address, that the agency sent notice to an incorrect address, and again have pointed to no statute or regulation that would have required the government to find where plaintiffs were allegedly living at that time. The court is having to assume that plaintiffs were no longer living at that Dearborn address, because plaintiffs also don't say that they were not living at that address at the time that notice was sent to that address. I should also note that plaintiffs rely on Caplesh, a Western District of New York case that is not binding on this court, but that is also distinguishable from the situation here, because in that case, the agency had noticed that plaintiffs had not received the RFEs in the decision, because the RFEs in the decision had been returned to the agency as undelivered. That has not happened in this case. There is no evidence in the record that the RFEs that were mailed to plaintiffs and the decisions that were mailed to plaintiffs were returned to the agency as undelivered. So the agency had no reason to believe that plaintiffs did not receive notice that the I-130s were adjudicated. Did they close the file when there's no response, or is that still an open file, so to speak? The file is closed, Your Honor. Once a decision is made on the I-130, the file is closed. That's not what your website shows, though. Yes, Your Honor. As the government has conceded, there seems to have been some oversight in terms of what the website showed regarding the status of the petition. But what is also notable is that the website did also state that in December of 2002, the agency had issued an RFE to plaintiffs requesting additional evidence. Plaintiffs do not address that issue. They claim that they were relying on the notation on the website that states that the petitions were pending. But if they were truly relying on what the website said, they would have also been notified that the agency had issued an RFE in December 2002 requesting additional documentation in order for plaintiffs to establish their eligibility for the I-130 petition. And I should also note that the website has been updated. There was some internal discussion as to whether or not an update should have been made on the website just to ensure that it wasn't viewed as post hoc, but to ensure that the most accurate information is on the website, we have made that change. In terms of plaintiffs' claim regarding this alleged Yemeni adjudicative scheme, the government's position is that plaintiffs also lack standing for that claim. By plaintiffs' own admission in paragraph 28 of their amended complaint, this alleged scheme began in 2009. Plaintiffs' petitions were fully adjudicated in 2003. Plaintiffs now no longer contend that their petitions were not adjudicated in 2003, as any alleged scheme that started in 2009 would not have affected plaintiffs and plaintiffs would have lacked standing to bring that claim. Are there any possibilities of any claims that are not moot, so to speak? No, Your Honor. The government's position is that all plaintiffs' claims are now moot or that plaintiffs lack standing to bring claims that plaintiffs have elected to bring. These include the constitutional claims and the APA claims, the 7062 claims. Plaintiff, in its briefing before the district court and in its filing before this court, curiously does not address standing at all, and standing is a prerequisite to bring claims before that court and before this court. Plaintiff focuses on mootness, which the district court did focus on, but the district court also had discussion on plaintiffs' inability to prove that they had standing to be before the court. And I believe that that is the biggest issue here, that plaintiffs simply lack standing to bring these claims. Well, what is, I guess, parenthood standing? I'm sorry, Your Honor? Standing. What would they need for standing? Well, Your Honor, plaintiffs would have to show that there was some sort of particularized injury, that the injury was traceable to the defendants, and that there was some form of redressability that the court could have granted them. And in this case, in all of their claims, that is just simply not the case. Remand to the district court, and then the district court, let's say, remanding to the agency, the court cannot order the agency to provide notice because the agency provided notice. The agency provided notice that was most reasonably calculated to reach plaintiffs, and that is notice sent to the address that plaintiffs provided. The court cannot order the agency to adjudicate the petitions because, as plaintiffs admit, the petitions were adjudicated in 2003. So we're at a place where the government is not really sure what relief plaintiffs are seeking before the court, and it appears that that is what the district court found as well in dismissing the complaint for mootness and lack of standing. It's just there is no remedy that the district court could have granted plaintiffs in this case. Well, I guess when you say there's no injury, well, I guess the injury, if you call it that, is that children and now grandchildren are still in Yemen. Yes, Your Honor, but plaintiffs' children and now grandchildren remain in Yemen because plaintiffs failed to submit a petition, an I-130 petition, that was eligible to be granted. Plaintiff's petition had internal inconsistencies with date of birth. Plaintiff had one date of birth for two of his children in these petitions and had a completely different date of birth in his I-45 application, and plaintiff did not respond to the request for evidence to clear up that inconsistency. The agency provided plaintiffs with an opportunity to provide documentation that would have allowed them to possibly be issued the I-130s, sent that notification to the address that plaintiffs provided, and plaintiffs failed to respond to that RFE. Thus, the I-130s were denied on the evidence that the agency had at the time and on the fact that plaintiffs simply failed to respond to the RFE. I guess you're saying there's nothing these plaintiffs can do, even to initiate now, I guess. No, Your Honor. Plaintiffs have the opportunity to file new I-130s, and in fact, plaintiff filed a new I-130 on behalf of his son, Sammy, and that would have been in May 2013. However, that I-130 was also denied in July of last year because plaintiff failed to appear for an interview that was scheduled. So I'm not really sure what relief plaintiff is seeking before this court. The district court did not err in dismissing plaintiff's amended complaint for lack of standing and mootness, and for that reason, the government would ask that the district court dismissal be affirmed. Thank you, Your Honor. Thanks to both counsel and the cases taken under advisement. The court will be in recess. Thank you. Thank you.